**David Brian ANDERSON, Appellant**

v.

**The STATE of Texas.**

Nos. PD–0028–02, PD–0029–02, PD–0030–02.

Court of Criminal Appeals of Texas, En Banc.

Jan. 18, 2006.

916

William Reagan Wynn, Fort Worth, for Appellant.

C. James Gibson, Fort Worth, Matthew Paul, State's Attorney, Austin, for State.

Before the court en banc.

WOMACK, J., delivered the opinion of the court, in which KELLER, P.J., and MEYERS, PRICE, HOLCOMB, and COCHRAN, JJ., joined.

The issue in this case is the standard for harmless-error review when, during arraignment, a court fails to admonish a defendant of the requirement to register as a sex offender which will affect him after conviction.

The appellant faced three indictments: two for aggravated sexual assaults of children and one for indecency with a third child. He did not waive his right to trial by jury. In accordance with Article 37.07, section 2(b), of the Code of Criminal Procedure he "filed his sworn motion for probation before the trial," and thus the same statute required that "the punishment be assessed by the . . . jury."

He was arraigned on, and pleaded guilty to, the indictments. Article 26.13 of the Code of Criminal Procedure requires, "Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of" four things: (1) the range of punishment attached to the offense, (2) certain aspects of the law on plea-bargain agreements, (3) the effect that a plea-bargain agreement may have on the right of appeal, and (4) the effect that a conviction might have on a non-citizen.[1] The article contains a fifth admonition for a defendant who is accused of an offense that may require him to register as

---

1. *See* CODE CRIM. PROC. art. 26.13(a)(1)-(4).

a sex-offender; the court must admonish such a defendant of that consequence.[2]

In arraigning the appellant, the court admonished him of the ranges of punishment attached to the offenses. It did not give him the second or third admonitions because, a jury being empaneled to assess punishment after the plea, there was no plea-bargain agreement.[3] It did not give him the fourth admonition, apparently because there is no suggestion that the appellant was not a citizen of the United States. The court also made some excellent inquiries to carry out its responsibility to reject a plea of guilty if it did not appear that the appellant was mentally competent and that his plea was free and voluntary.[4] But the court neglected to admonish the appellant on the registration requirements for convicted sex offenders.

The jury found the appellant guilty and assessed punishments of seventy-five years' imprisonment in each case of aggravated sexual assault and twenty years in the indecency case.

On appeal he complained of the failure of the court to give him the sex-offender-registration admonition. The Court of Appeals noted the error and turned to the issue of its harm. *See Anderson v. State,* 62 S.W.3d 304 (Tex.App.-Fort Worth 2001). The Court perceived a split among the courts of appeals, in which some courts had held such an error to be harmless,[5]

and another had held it not to be harmless.[6] The Court of Appeals held that the error was harmless because, for one thing, "sex offender registration, while serious, is a collateral consequence of appellant's guilty pleas and that the trial court's failure to admonish him regarding the registration requirement did not render his pleas involuntary."[7] The Court added, "Further, in the absence of evidence in the record that appellant was unaware of the consequences of his pleas and that he was misled or harmed by the trial court's admonishment, we conclude the trial court's failure to admonish appellant regarding the registration requirement was harmless error."[8] It affirmed the judgments of conviction. We granted review.

 Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial: the privilege granted against compulsory self-incrimination guaranteed by the Fifth Amendment, and the Sixth Amendment rights to be tried by jury and to confront one's accusers; the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States sets the standard of voluntariness for a waiver of these important federal rights.[9] Among other constitutional requirements is one that a defendant who pleads guilty be fully aware of certain

2. *See id.,* at (a)(5).

3. *See Richards v. State,* 562 S.W.2d 456, 458 n. 1 (Tex.Cr.App.1978) ("Plea of guilty was before a jury and therefore obviates the necessity of admonishing appellant that the prosecuting attorney's recommendation was not binding on the court.").

4. *See* Code Crim. Proc. art. 26.13(b).

5. *See Anderson,* 62 S.W.3d, at 307 (citing *Thompson v. State,* 59 S.W.3d 802 (Tex.App.-Texarkana 2001, pet. ref'd)); *Torres v. State,*

59 S.W.3d 365 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd)); and *Ducker v. State,* 45 S.W.3d 791 (Tex.App.-Dallas 2001, no pet.)).

6. *See ibid.* (citing *Shankle v. State,* 59 S.W.3d 756 (Tex.App.-Austin 2001), *vacated on other grounds,* 119 S.W.3d 808 (Tex.Cr.App.2003)).

7. *Ibid.*

8. *Ibid.*

9. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

consequences of the plea.[10] But this constitutional standard does not require a court to admonish a guilty-pleading defendant "about every possible consequence of his plea, direct or collateral, only about those direct consequences that are punitive in nature. ... We hold that the failure to admonish appellant as to a direct, non-punitive consequence of his plea, specifically, the sex-offender-registration requirement, did not violate due process or render his plea involuntary." [11]

■■■ A Texas court, however, must do more than is required to meet the minimum standards of due process of law when a defendant pleads guilty in a felony case. It also must "admonish a defendant [who is pleading guilty] ... about those direct consequences that are ... specifically enunciated in the law. *See,* TEX.CODE CRIM. PROC., art 26.13." [12] The registration requirement for persons who are convicted of sex offenses is a direct consequence.[13] The required admonition about the registration requirement has been specifically enunciated in Article 26.13 since September 1, 1999.[14] The issue in this case is not constitutional error; it is a violation of Article 26.13's prescribed admonition.

For such violations, Article 26.13(c) itself contains a directive to appellate courts:

In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

"There is a large gray area between letter-perfect compliance and total failure to admonish," [15] and questions of substantial compliance arise in that gray area. Here we are in the pure black area of total failure to admonish on the sex-offender registration requirement.

■ When there is insufficient admonition, whether by total failure to admonish or an admonition that is not in substantial compliance, the violation of Article 26.13 comes within the standard of Rule of Appellate Procedure 44.2(b): "Any other [than constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." [16]

■■■ Whether an error was in violation of a "mandatory" statute has no place in the analysis under Rule 44.2(b).[17] The issue is whether, in a given case, the error affected substantial rights, in which case it is not harmless error. No party should have a burden to prove harm from an error, and there ordinarily is no way to prove "actual" harm.[18] It is important to look at the record as a whole. In general, we look to the severity of the error in a

10. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

11. *Mitschke v. State,* 129 S.W.3d 130, 136 (Tex.Cr.App.2004).

12. *Ibid.*

13. *Ibid.*

14. *See* Act of June 19, 1999, 76th Leg., R.S., ch. 1415, § 1, 1999 Tex. Gen. Laws 4831, 4831 (requiring admonition); *id.,* § 33, 1999 Tex. Gen. Laws, at 4843 (effective date).

15. *Taylor v. State,* 610 S.W.2d 471, 478 (Tex. Cr.App.1980) (on rehearing *en banc* ).

16. *Aguirre–Mata v. State,* 992 S.W.2d 495 (Tex.Cr.App.1999) (admonition on range of punishment); *Carranza v. State,* 980 S.W.2d 653 (Tex.Cr.App.1998) (admonition of immigration consequences).

17. *Hawkins v. State,* 135 S.W.3d 72 (Tex.Cr. App.2004).

18. *Ovalle v. State,* 13 S.W.3d 774, (Tex.Cr. App.2000). *Accord, Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Cr.App.2001).

trial, to measures taken to cure the error, and to the certainty of conviction without the error.[19]

When the error was in admitting evidence, we have said, "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)." We decided, "In light of the properly admitted evidence [on the issue of fact], we find that the complained of documents in the present case did not have a substantial or injurious influence on the jury's decision." [20]

When the error was in sustaining a challenge for cause, we held that no substantial right was affected so long as the jury that remained in the box was lawfully constituted.[21]

■ The question for us to decide in applying Rule 44.2(b) to the failure to give an admonition is, considering the record as a whole, do we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him?

When courts have failed to admonish guilty-pleading defendants on the immigration consequence of conviction, we have held the error was harmless error when the record showed that a defendant was a citizen of the United States.[22] Obviously the admonition would not have changed the citizen's decision to plead guilty. But

when the record showed that the defendant was not a citizen, even though he was subject to deportation as an illegal immigrant, we held the error was not harmless.[23] Why? The criminal conviction puts such an alien "clearly at a greater disadvantage if subject to deportation as a criminal deportee rather than one who has an expired permit." [24] We could not be assured that, aware of the greater disadvantage, the alien defendant would have pleaded guilty.

■ In this case, the admonition that was omitted was about the registration requirement for a defendant who is convicted of certain sex offenses. What is the requirement? Basically it is that the person inform his local law enforcement authority of his whereabouts, so that law enforcement authorities can inform the public. A person who has a reportable conviction must register with the local law enforcement authority in any municipality or county in which he resides or intends to reside.[25] The authority must publish, in the newspaper of greatest circulation, two notices that include the photograph and residence address of the person, a brief description of the person's offense, and the person's "risk level." [26] The authority must give notice to public and private school administrators.[27] If the person is in the highest risk level, notices must be delivered to every residence in an area surrounding his residence.[28] The Department of Public Safety maintains a database

---

19. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Cr.App.1998).

20. *King v. State*, 953 S.W.2d 266, 270 (Tex.Cr. App.1997).

21. *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Cr.App.1998).

22. *Cain v. State*, 947 S.W.2d 262 (Tex.Cr.App. 1997).

23. *Carranza, supra* note 16.

24. *Id.*, at 658.

25. *See* Code Crim. Proc. arts. 62.02, 62.03.

26. *See ibid.*

27. *See ibid.*

28. *See id.*, art. 62.045.

of registrations that is available to the public through the internet.[29] These are not inconsiderable consequences for a convicted person.

Of course, if the appellant already were aware of the registration requirement, the effect of the court's error on his decision to plead guilty would be much less. In this case, the defense relied on it as part of the appellant's case to have the jury recommend a probated sentence.

The appellant introduced the evidence of a probation officer, who testified about the registration requirement. The witness told the jury that if the defendant was put on probation he would be required to register as a sex offender for the rest of his life, that a person with more than one conviction would have to register every 90 days, that there was newspaper publication, that there was a website run by the Department of Public Safety, that there would be risk assessment, and that if a person was in the highest level of risk, everyone in a certain radius of the appellant's residence would be notified.

The same witness testified about other conditions of probation that the judge of the court usually imposed on sex offenders, and he testified about the specialized caseloads for probation officers who supervised sex offenders.

The appellant also introduced the testimony of a "psychotherapist" who was counseling the appellant. He specialized in the treatment of sexual offenders, and he said he was "among the tougher therapists." His opinion was that the appellant "would be compliant with the rules of probation." He said that the appellant "believes he would probably go to prison."

The calling of these witnesses for the defense in the punishment hearing is some, but not conclusive, evidence from which to infer that the appellant had personal knowledge of the registration requirement at the relevant time, which is the time at which he entered his plea of guilty.

In considering the effect of the court's error on the appellant's decision to plead guilty, we also consider the strength of the evidence of guilt. The appellant gave police a handwritten confession which read, "I, David B. Anderson, am guilty of sexual abusing [sic] kids since I was twelve years old. I wish I didn't and can't apologize enough. R ..., St ..., M ..., A ..., B ..., Sa ..., [girls' names] were abused by me. I made a video."

Police found the videotape when they executed a search warrant in the appellant's residence. It showed him abusing the girls. When he and the police investigator watched the videotape, the appellant "obtained an erection."

The mother of M ... and B ... testified. She met the appellant at a church function. He had a daughter, too. He asked if her girls could come over and visit his daughter. She let M ... (who was ten years old) and B ... (who was five) spend the night at the appellant's house "probably five" times. The appellant rubbed suntan lotion on the girls. M ... told her mother that the appellant put his finger inside M ...'s private area. She told the jury, too. He only rubbed the outside of B ...'s privates.

A ...'s mother testified that she met the appellant in Sunday school. A ... was six when she spent the night at the appellant's house. A ... told the jury he put his hand on the outside and the inside of her "baby hole. It felt bad and it really, really hurt." There were almost always other girls there when it happened.

---

29. *See id.,* art. 62.08.

St ... and R ... were the daughters (by another man) of a woman with whom the appellant had his daughter. R ...', who was ten, told the jury that the appellant touched her privates with his hand when she was seven. She and St ... were visiting the appellant's house. She wasn't sure how many times it happened.

Sa ...'s mother testified that she met the appellant at Sunday school. The appellant's daughter spent the night at her house fifteen to twenty times, and her daughter (who was nine at the time of the trial) spent the night at the appellant's house fifteen to twenty times. Sa ...'s mother had seen a videotape of Sa ..., nude, sitting on the appellant's lap with her legs spread open.

There was other evidence of guilt, but we need not go into it. There was no evidence that the appellant was not guilty.

Considering the record as a whole, we have fair assurance that no substantial right involving the appellant's decision to plead guilty was affected by the trial court's error in failing to admonish him of the registration requirement for convicted sex offenders. By the standard of Rule of Appellate Procedure 44.2(b), the error was harmless.

We affirm the judgments of the courts below.

HERVEY, J., filed a concurring opinion in which JOHNSON and KEASLER, JJ., joined.

HERVEY, J., concurring opinion in which JOHNSON and KEASLER, JJ., joined.

Before accepting a guilty plea in a case like this, a trial court must comply with less than clear federal constitutional standards [1] and applicable state statutory standards set out in Article 26.13, Tex.Code Crim. Proc. See Gardner, 164 S.W.3d at 398 (compliance with Article 26.13 and compliance with Boykin are two separate issues); Aguirre–Mata, 125 S.W.3d at 474–77. Difficulties in following this procedure may arise for trial courts when the case does not involve a plea-bargain, the defendant enters an open guilty plea, and, as the Court's opinion points out, not all of the admonishments contained in Article 26.13 apply to the open plea. Before accepting an open plea in these circumstances, trial courts must still follow federal constitutional standards and the Article 26.13 standards that apply to the open plea.

In this case, federal due process, vis-a-vis Boykin, did not require an admonishment regarding the sex-offender-registration requirement to be "spread on the record" while state statutory law, vis-a-vis Article 26.13(a)(5), required such an admonishment. Therefore, the trial court's

1. Federal constitutional standards require "knowing and voluntary" guilty pleas affirmatively shown on the record, and these standards prohibit guilty pleas that "cannot stand as an intelligent admission of guilt," or that are induced by "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats," or that are not affirmatively shown on the record to have been made voluntarily and with an understanding of the nature of the constitutional protections waived by the guilty plea, the privilege against compelled self-incrimination, the right to trial by jury and the right to confront one's accusers. See generally Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); see also Gardner v. State, 164 S.W.3d 393, 398–99 (Tex.Cr.App.2005); Aguirre–Mata v. State, 125 S.W.3d 473, 475 (Tex.Cr.App. 2003) (Boykin is silent on specifically what due process requires to be "spread on the record" affirmatively showing the voluntariness of a guilty plea except to say generally that state courts should ensure that guilty-pleading defendants have "a full understanding of what the plea connotes and its consequence").

failure to provide this admonishment is nonconstitutional error subject to the TEX. R.APP. PROC. 44.2(b) harm analysis with the state-law inquiry being whether the failure to provide the admonishment affected the defendant's decision to plead guilty. *See Aguirre–Mata,* 125 S.W.3d at 476–77.[2] If the record shows that a defendant was aware of the information contained in the missing admonishment, then it would be very difficult to conclude that the failure to provide the admonishment affected his decision to plead guilty.[3]

In applying the Rule 44.2(b) harm analysis in this case, I would hold that it is dispositive that the record reflects that, when he pled guilty, appellant knew about the sex-offender-registration requirement as shown by his reliance on this requirement as part of a strategy to persuade his jury to recommend probation.[4] *See Mitschke v. State,* 129 S.W.3d 130, 136 (Tex.Cr.App.2004) (defendant not harmed by alleged constitutional error in failing to admonish him that he would have to register as a sex offender because record showed that he was aware, or should have been aware, of this requirement); *Aguirre–Mata,* 125 S.W.3d at 476–77 (de-

fendant not harmed from nonconstitutional error in failing to admonish him on range of punishment because record contained references to correct range of punishment and nothing in record showed that defendant was unaware of correct punishment range); *cf. Gardner,* 164 S.W.3d at 399 (record affirmatively showed compliance with federal constitutional standards because record showed that defendant's guilty plea was part of strategy to persuade jury to grant him probation). Under these circumstances, it would not be reasonable to conclude that the lack of an admonishment on the sex-offender-registration requirement affected appellant's decision to plead guilty. The Court's discussion of "the strength of the evidence of guilt" is unnecessary in this case, although it might be relevant in some future case.

With these comments, I concur in the Court's judgment.

---

2. It, therefore, does not violate federal constitutional due process standards for a state not to provide a defendant with an admonishment regarding a sex-offender-registration requirement even if such an admonishment would affect the defendant's decision to plead guilty.

3. Case law is ambiguous on whether, in cases like this, the record must affirmatively show that a defendant was unaware of the information contained in the missing admonishment. *See Aguirre–Mata,* 125 S.W.3d at 476–77 (record did not show that defendant was unaware of range of punishment); *Burnett v. State,* 88 S.W.3d 633, 641 (Tex.Cr.App.2002) (record did not show that defendant was unaware of the punishment range). It is unnecessary to resolve this ambiguity in this case since the record shows that appellant was aware of the sex-offender-registration requirement.

4. This, according to the Court's opinion, is some evidence that appellant knew of the sex-offender-registration requirement when he pled guilty. This, and not conclusive evidence, as the Court's opinion seems to suggest, is all that is required to support a finding that appellant knew of the sex-offender-registration requirement when he pled guilty. We may also presume that appellant's counsel explained this requirement to appellant before or "at the relevant time." *See Gardner,* 164 S.W.3d at 399 (trial strategy may make guilty plea seem the desirable course). This case is similar to our recent decision in *Gardner* which relied on post-plea developments to decide that the record affirmatively showed compliance with federal constitutional standards at the time of the plea. *See Gardner,* 164 S.W.3d at 398–400.